IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Case No. 1:20-cr-171 |
| v. ) | |
| ) | Hon. Rossie D. Alston, Jr. |
| ) | |
| JORGE JOVEL-BOJORQUEZ, ) | Sentencing: May 8, 2024 |
| Defendant. ) | |

## DEFENSE POSITION ON SENTENCING

The parties agree that the goals of 18 U.S.C. § 3553 will be best achieved by a sentence of time-served in this case. Mr. Jovel-Bojorquez has already served five years in state custody, not for any additional criminal conduct, but because of his decision to return to the United States without permission. He has served nearly six months in federal custody on this illegal reentry charge. His only prior offense is a robbery that occurred 15 years ago when he was 17 years old. He needs no more jail time to be deterred, and no more is needed to send a stern message of general deterrence.

The defense has reviewed the presentence report and has no objections to it. For the reasons that follow, a time-served sentence is the just outcome in this illegal reentry case.

I.   **Legal Standard**

By law, a sentencing court must consider a number of factors when deciding the proper sentence in any given case.[1] *See* 18 U.S.C. § 3553(a).  The applicable Sentencing Guidelines range is only one of those factors, weighted no more nor less than any other.  *See, e.g.*, *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. § 3553(a)).  *See also United States v. Booker*, 543 U.S. 220, 259-60 (2005) (Sentencing Guidelines range is advisory).

The principal directive in the actual language of § 3553(a) is to "impose a sentence sufficient, but *not greater than necessary*, to comply with the purposes" of sentencing.  (Emphasis added).

II.   **Procedural Background**

Mr. Jovel-Bojorquez has unlawfully entered this country twice:  First, in 2008, when he was a minor traveling alone to join his father here, and a second time in 2017.  On August 26, 2019, Mr. Jovel-Bojorquez was arrested on an Arlington, Virginia, probation violation warrant that had issued in 2012 for his failure to comply

---

[1] Those factors include: (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the seriousness of the offense, (4) respect for the law, (5) just punishment for the offense, (6) deterrence, (7) protecting the public from further crimes of the defendant, (8) providing the defendant with needed educational or vocational training, medical care, or other correctional treatment, (9) the kinds of sentences available, (10) the Sentencing Guidelines range, (11) pertinent policy statements, (12) avoiding unwarranted sentencing disparities, and (13) providing restitution to any victims.  *See* 18 U.S.C. § 3553(a).

with the conditions of his probation, which he could not do because he had been deported. After being deported, he had remained in Guatemala for the five-year probation period. After his return in 2017, he had not incurred any new criminal convictions. Nevertheless, in 2019 Arlington found him in violation of the terms of his probation and he has been incarcerated ever since: First, on the five-year violation sentence and then for this prosecution.

On July 28, 2020, while Mr. Jovel-Bojorquez was serving the violation sentence, the government obtained an arrest warrant for him in this District for illegal reentry. Dkt. Nos. 1-5. Mr. Jovel-Bojorquez entered Marshals Service custody on November 16, 2023, when he finished serving his state violation sentence. PSR at 1; Dkt. No. 6.

Following indictment, Mr. Jovel-Bojorquez agreed to plead guilty to the single count of illegal reentry without a written plea agreement. Mr. Jovel-Bojorquez entered his plea on February 14, 2024. He cooperated in the preparation of the PSR. PSR ¶ 21. Sentencing is scheduled for May 8, 2024.

### III. Mr. Jovel-Bojorquez's Personal History

Mr. Jovel-Bojorquez, who is now 32 years old, is from Guatemala and originally came to this country as a minor to work and help support his mother and siblings financially. But all of Mr. Jovel-Bojorquez's adult life has been shaped by a single event that occurred before his 18th birthday. In May 2009, when he was still 17, Mr. Jovel-Bojorquez was a participant in an attempted robbery led by an older man brandishing a firearm. Fortunately, no one was hurt, and nothing was taken. The

older man was never caught. But Mr. Jovel-Bojorquez was, and the aftermath of this event has colored his life ever since. He has now spent nearly eight years incarcerated in connection with this crime. He could not tell this Court his story without delving into these events.

### A. Mr. Jovel-Bojorquez's prior conviction in Arlington.

Mr. Jovel-Bojorquez first traveled to the United States as a teenager in 2008.[2] He made the journey by himself, following his father who had spent years working here. Mr. Jovel-Bojorquez's father rented a basement room in Arlington, Virginia, and worked as a landscaper at the Army Navy Country Club and part-time at a local Wendy's. When Mr. Jovel-Bojorquez arrived at 16 years old, he moved in with his father and joined him at both jobs.

In his free time, the teenage Mr. Jovel-Bojorquez often played video games at a local laundromat, according to his father. In May 2009, when he was 17, Mr. Jovel-Bojorquez was involved in an attempted robbery of a jewelry store housed inside that laundromat. An older man had recruited him to participate. The older man brandished a gun during the attempt and made threatening statements. The witnesses uniformly reported that the older man had the gun and was directing the attempted robbery. Witnesses also reported that Mr. Jovel-Bojorquez actually

---

[2] The following details come from the PSR and the Arlington County police reports and transfer report, which counsel was able to review at the Probation Office.

disobeyed the older, armed man to stave off violence.  The robbery attempt failed when both the victims and assailants fled the store.

Questioned by police without his father present,[3] Mr. Jovel-Bojorquez gave a lengthy statement about what had happened.  He said he did not know the older man and that that man had threatened him with the gun to force him to participate.  He said the man stole his cell phone, suggesting police could use that to try to locate the man.  Mr. Jovel-Bojorquez was arrested and held in juvenile detention.  The older man apparently was never identified.

The Arlington probation office prepared a detailed report (called a Transfer Report) about whether Mr. Jovel-Bojorquez should remain in the juvenile system or be prosecuted as an adult.  The report describes Mr. Jovel-Bojorquez as "small in stature" with "acne on his face"—he had not yet reached his full height.  He was friendly and cooperative with the probation officers.  He told them that he was homesick for his mother.

The report recommended that Mr. Jovel-Bojorquez's case remain in the juvenile court system, citing Mr. Jovel-Bojorquez's recent arrival in the United States, his lack of language and cultural fluency, his demonstrated respect for authority during the preparation of the report, his family's support, his lack of any other disciplinary or criminal history, and his progress in juvenile detention where

---

[3] Mr. Jovel-Bojorquez's father had a 2nd grade education himself and readily agreed to let his minor son be interviewed by police alone.

his compliance with the rules had earned him extra privileges. The report found that these factors indicated that Mr. Jovel-Bojorquez could be adequately and more appropriately provided rehabilitative services in the juvenile system. Unfortunately, the report's conclusions were not heeded, and adult charges were filed.

Mr. Jovel-Bojorquez ultimately entered an Alford plea. He was convicted of two counts of attempted robbery and one count of use of a firearm. He was sentenced to 3 years of incarceration on the firearm count, and 5 years, all suspended for 5 years, with 5 years of probation on the attempted robbery counts. Mr. Jovel-Bojorquez was imprisoned from his arrest on May 29, 2009, until his release to ICE custody on January 30, 2012. ICE deported him on February 16, 2012.

On September 13, 2012, Arlington Probation sought a warrant for Mr. Jovel-Bojorquez's arrest, stating that he had failed to comply with the conditions of his probation *but acknowledging that he had been deported after completing his sentence*.

In August 2017, Mr. Jovel-Bojorquez was arrested in Houston, Texas, for giving false identification to a police officer. That charge was later dismissed. While it was pending, Mr. Jovel-Bojorquez recalls a Houston officer called Arlington to ask about Mr. Jovel-Bojorquez's status, but no warrant appeared in the system. Then in August 2019, Mr. Jovel-Bojorquez approached a Houston police officer to ask about his 2017 charge. At that point, the Arlington warrant did pop up; Mr. Jovel-Bojorquez was arrested and transported to Virginia.

At the probation violation hearing in Arlington on October 25, 2019, the judge imposed all of the time that had been previously suspended, five years. There was

6

no substantial basis for that hefty sentence other than Mr. Jovel-Bojorquez's illegal reentry. He had not willfully violated his probation in any other significant way: The warrant filed in 2012 acknowledged he had been deported after completing his sentence; there is no evidence that Mr. Jovel-Bojorquez had returned during the five-year period of probation (which would have expired in January 2017) and then failed to comply; and, Mr. Jovel-Bojorquez had not been convicted of any new crimes—the sole new charge (giving a false identification) had been dismissed.

Mr. Jovel-Bojorquez was in custody on the five-year violation sentence through the Covid pandemic and until his release into federal custody in November 2023 for these proceedings.

   **B.  Mr. Jovel-Bojorquez's family background.**

Mr. Jovel-Bojorquez was born in Asuncion Mita, a town in the Guatemalan state of Jutiapa, not far from the Salvadoran border. He was only five months old when his father left to find work in the United States. Mr. Jovel-Bojorquez was the second child of four. For nearly all of his childhood, his mother raised the children on her own while their father sent money back from the U.S.

Even with those contributions, the family was poor. Mr. Jovel-Bojorquez describes his childhood as "sad." The children did not always get enough to eat. He does not remember ever celebrating a birthday. At 9 years old, Mr. Jovel-Bojorquez left school so he could begin contributing financially. Though he loved learning and still today wishes for more education, he went to work picking tomatoes and helping with livestock. At 16 years old, he made the difficult journey from Guatemala to join

his father in Virginia.

Mr. Jovel-Bojorquez has always wanted to work hard. He describes himself as needing to keep busy. Even after his 2009 arrest, Mr. Jovel-Bojorquez found ways to be productive. In juvenile detention he attended classes, earning As in many of them. In the Transfer Report, his teachers described him as an active participant with a cooperative attitude. Later, in the Arlington Adult Detention Center, he took English as a Second Language. In the Virginia Department of Corrections, Mr. Jovel-Bojorquez worked variously as a prep cook, a janitor and in maintenance, depending on the facility. He also started GED classes, but his program was cut short when he was transferred to a different facility. Since his arrest in this case, Mr. Jovel-Bojorquez has signed for jobs and classes, though no opportunities have come up yet.

Mr. Jovel-Bojorquez's English is excellent. After learning some basics, he reports that he largely taught himself while incarcerated. He hopes to use his language proficiency to find work in Guatemala. He aspires to get his GED once he is released and can purchase the books he needs to study for it.

In between his original Arlington sentence and the violation sentence, Mr. Jovel-Bojorquez tried to make a living in Guatemala. For five years he tended crops for landowners in his town. He found a partner and had a daughter. But the tattoos he had gotten while incarcerated as a young man marked him as a target for police and cartels. Mr. Jovel-Bojorquez feared for his life and for his ability to support his small family. Ultimately, he chose to return to the United States, specifically to Houston, where his brother was living.

Again, Mr. Jovel-Bojorquez was ready to work. He found employment as a maintenance worker for an apartment complex. He did roofing, painting, framing and other maintenance. He was injured carrying too much weight up a ladder but was back at work two weeks later—ever since, he has suffered from pain he believes is connected to that injury.

In 2019, when Mr. Jovel-Bojorquez was arrested on the Arlington probation violation, his relationships with family back home were interrupted. His deepest regret has been the impact this absence has had on his daughter. *See* Ltr. of Jorge Jovel-Bojorquez, attached as Exhibit A. He has been unable to speak with her since 2019 because international phone calls using the prison and jail systems have been too expensive for him to afford.

**IV.    Sentencing Argument**

Mr. Jovel-Bojorquez was a law-abiding teenager before his 2009 arrest. With the exception of his decision to return to this country without permission, he has been a law-abiding adult since his release in 2012. He did not return to this country and commit additional offenses. Remarkably, he was arrested in 2019 when he himself approached law enforcement, not the other way around. Yet, the criminal justice system Mr. Jovel-Bojorquez has encountered in this country has been especially harsh, demonstrating little consideration for his personal history, his age, relative culpability, and otherwise good conduct.

This Court can and should consider those factors, along with what constitutes just punishment and what would foster respect for the law. This Court can and

should impose a sentence that reflects a more balanced approach.

The parties agree that the just outcome is time-served in this case. The government's decision to join that request reflects admirable consideration for what constitutes justice in this individual case: The government describes the circumstances of this case as unique and its recommendation as "not take[n] lightly," Dkt. No. 25, at 4. This Court should impose a sentence of time-served because that sentence will most fully achieve the goals of 18 U.S.C. § 3553(a).

### A.   The Guidelines overemphasize Mr. Jovel-Bojorquez's prior conduct.

This Court must calculate the Sentencing Guidelines applicable to Mr. Jovel-Bojorquez's case. 18 U.S.C. § 3553(a). It may not, however, presume the resulting advisory Guidelines range to be reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009) ("The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."). In this case, the Guidelines are unreasonably high because Mr. Jovel-Bojorquez's 14-year-old conviction for conduct that occurred when he was a juvenile and that was an aberration for him then and now has multiplied Guidelines applicable in this case.

Mr. Jovel-Bojorquez's 2009 conviction counts for the only 3 points in his criminal history score and adds 8 points to his offense level. Thus, the Guidelines in this case rest almost entirely on that single 14-year-old conviction without accounting for all of the context described herein and the time that has passed since. Without that conviction, Mr. Jovel-Bojorquez's Guidelines range would be 0 to 6 months.

### B.     Mr. Jovel-Bojorquez faces stringent consequences if he returns illegally again.

Mr. Jovel-Bojorquez has no intention of returning to this country unlawfully. Of the roughly 10 years he has been physically in this country, he has been incarcerated for almost 8. Incarceration from a young age has had a profound effect on him. He never wants to be put back into confinement.

Prison is an undeniably harsh environment. That was even more true for Mr. Jovel-Bojorquez, who turned 18 in custody, spoke little English and was still familiarizing himself with U.S. culture. Having weathered coming of age in prison, Mr. Jovel-Bojorquez subsequently was incarcerated through the entire pandemic. Though Covid-19 is easier to shrug off these days, it is important to remember how terrifying the pandemic was when it first swept the globe in 2020. Prisoners especially were in acute danger and had no control over their environment. In addition to fear for their health and safety, classes, employment and visitation were canceled. Lengthy lockdowns ensued. Personal protective equipment, like masks and sanitizer, were not issued at first and then were hard to come by for inmates even once these items were in widespread use elsewhere. "[I]ncarceration [during the pandemic was] harsher and more punitive than would otherwise have been the case." *See United States v. Brown*, 78 F.4th 122, 132 (4th Cir. 2023) (internal quotation marks and citation omitted).

Mr. Jovel-Bojorquez is acutely aware that if he unlawfully returns to this country again, he will be incarcerated. He does not want to take that risk. As he

writes in his letter, he wants to "make something of [his life]" and to help his daughter live a better life than he has. *See* Ltr. of Jorge Jovel-Bojorquez, attached as Exhibit A. He cannot do that from inside a jail cell. He cannot lift his daughter up if he is locked away from her. He has missed critical milestones in his family's life and cannot afford to miss any more.

### C. A time-served sentence would best achieve the additional aims of § 3553(a).

Mr. Jovel-Bojorquez already has been incarcerated for nearly five years. The only criminal conduct that preceded those five years of incarceration was his illegal reentry. The time Mr. Jovel-Bojorquez already has served is far longer than the Guidelines advise for his return to this country illegally. It is more than sufficient to deter him and to send a message of general deterrence to others similarly situated. Indeed, the Guidelines themselves advise that a downward departure may be appropriate in illegal reentry cases where the defendant was serving time in state custody when located by immigration authorities, as happened here. *See* USSG § 2L1.2 cmt. 7. Further incarceration now will not do more to satisfy the goals of § 3553(a).

This Court can ensure that its punishment is just and promote respect for the law by fully considering Mr. Jovel-Bojorquez's background and the history that brought him to this point. A time-served sentence is sufficient given the unique facts of this case. As the parties have both suggested, it is the just sentence here.

## V. Conclusion

Accordingly, for the foregoing reasons, Mr. Jovel-Bojorquez respectfully requests that this Court impose the time-served sentence that both parties agree is appropriate.

Respectfully submitted,
JORGE JOVEL-BOJORQUEZ
By counsel,

Geremy C. Kamens
Federal Public Defender

By:   /s/ Cadence Mertz
      Cadence Mertz
      Va. Bar No. 89750
      Assistant Federal Public Defender
      Office of the Federal Public Defender
      1650 King Street, Suite 500
      Alexandria, Virginia 22314
      703-600-0800
      703-600-0880 (fax)
      Cadence_Mertz@fd.org

*Counsel to Mr. Jovel-Bojorquez*

# EXHIBIT A

04/04/2024

señor Juez me presento asia usted en esta carta para espresar lo que siento yo se que no todo somos perfectos, yo de mi parte mi error fue venir a los estados unidos de America ilegalmente por ese error estoy en la situacion que me encuentro, soy uno como el resto de los demas todos cometemos errores mi ingnorasia me llevo a estar en esta situacion lo que mas me duele es que no solo ami me afecta sino tambien a mi familia tengo una hija que es lo mas presido que tengo en este mundo ella me necesita emosionalmente y economicamente yo regrese a este pais por sacar a mi familia de la mal economia que pasabamos, en nuestro pais no hay oportunidades, yo y mi familia queremos ser alguien en la vida, si algun dia tengo la oportunidad de que mi hija venga a los estados unidos de America legalmente, lo voy a hacer para que ella tenga un futuro mejor. señor juez le pido disculpa a su pais por aver entrado ilegalmente, si yo pudiera rregresar el Tiempo y entrar legalmente a este pais lo hiciera porque en este pais las oportunidades son muy grandes, para aquellos que lo desean y se lo proponen, con esto me despido no quiero aburrirlo con una carta muy larga, dejo todo en las manos de dios y en las manos de usted señor juez muchas gracias y que Dios me los vendiga atentamente

Jorge Alberto Jovel Bojorquez

Your Honor,

I come to you by way of letter to express how I feel. I know that not everyone is perfect. I know my mistake was coming to the United States illegally, and that it is the reason why I am in the situation that I'm in. I am like everyone else who makes mistakes, and my ignorance led me to be in this situation.

What hurts me the most is that this not only affects me but also my family. I have a daughter who is the most precious thing I have in this world. She needs me emotionally and financially.

I came back to this country to get my family out of a bad economy, as there are no opportunities in our country.

Me and my family want to make something of our lives. If some day I have the opportunity for my daughter to come to the United States legally, I will do it so that she has a better future.

You Honor I ask this country for forgiveness for entering illegally. If I could go back in time and enter this country legally, I would, because there are big opportunities in this country for those who wish to strive for them.

With that I say goodbye as I don't want to bore you with such a long letter. I leave everything in the hands of God and you, your Honor.

Thank you and may God bless you.

Regards

Jorge Alberto Jovel Bojorquez


Translated by Robert Gonzalez, FPDO paralegal.